Blake Osler, appearing for RSA. I'll be arguing for RSA, the appellant. All right. Please proceed. I'd like to reserve seven minutes for rebuttal. All right. Well, you reserve it. We'll try to mention it, but it's your obligation. Certainly. This, if you're ready, I'll begin. Yes. This is a case that involves essentially two issues, one of which was before the district court below, but never addressed by the district court below, and it is the most important issue in the entire case at this point. The district court below granted a summary judgment against RSA, which brought a claim, as you're aware, for copyright infringement on the basis of laches, saying that there was a 10-year delay between the period of time that RSA should have known of a manual that the court concluded was a verbatim copy of RSA's manual, and holding that because an envelope containing a manual that Evergreen had created was sent to RSA, that therefore it was on some type of constructive notice for a 10-year period and should have acted. However, there are two key issues. One is the fact that laches is not a defense where infringement is willful. Where's your evidence of willfulness here? It's based upon the learned hand standard of willfulness. That is, a person who knows that a matter is copyrighted and nevertheless copies it is willfully infringing. But in this case, correct me if I'm wrong, Evergreen invited Sorensen in 1999 to comment on his draft manual, paid him $300 in 1999 in conjunction with his consultations, identified and thanked him in a forward of his publication until 2009. Repeatedly, Sorensen himself advertised his involvement in the development of the Washington Pilot Escort Training Program and repeatedly publicly advertised his willingness to consult with and assist states in developing pilot escort training programs. It's a little hard for me, and I'm looking for your help on this. I know that willfulness is a defense to laches. But where somebody, at least based on this information, seems to be not only cooperating but is almost helping to write some of this, at least approving it, it does not make any sense to me that that would be considered a willful violation of copyright. Those are not the facts. Okay, tell me the facts. The first fact is that Mr. Sorensen had two visits to Washington. That's what the record shows. They were to consult before the manual was created, and there's no mention in any of the minutes in any of the meetings that he attended of any manual. Zero evidence. Had the manual draft been prepared at that point? No. It had not? No. And in fact, what the record shows is that subsequent to his visits in July of 1998, Evergreen made an inquiry as to whether or not RSA's manual was copyrighted. Without ever contacting RSA to see if it could have permission to use the manual, which was the appropriate thing to do or to obtain the license, in August it determined that, in fact, it was copyrighted. And instead of – Can you give me some ER references on these things? It would be helpful. The escort vehicle meeting minutes, it's ER 172. It's an August 1998 minutes from the Evergreen Board of Directors, Board of Trustees, where they state, the Utah training materials for escort vehicles are copyrighted. Monty Lisch talked about modifying the format to a more presentable fashion, more readable. What they've concluded is that in fact – I think the dates that Smith is asking about is, then when was the – that was the meeting. When was the manual done? When was it sent to Utah, to the ARERS or whatever, RSA? Yeah. The meetings that Mr. Schwartzen had were before the manual was created. The key fact here is that when they were creating the manual, they knew it was copyrighted. They then – I mean, it's undisputed – they then send a letter along with a copy of the manual after it had been created. Now, let's talk about the $300 check, because the notion on a summary judgment that that could possibly be construed to be in relation to a license is nonsense. The check itself shows on its face that it was payment for training to a particular individual. What RSA does is offers courses where it trains individuals in pilot car escort and protocol. Where is that in the ER, please? Can you find me the $300 check? While he looks, maybe you can go on. Yeah. The $300 check notes that it's for training for a particular individual. There's no reference to a manual, and the training wouldn't have anything to do with that manual. So the $300 had nothing to do with paying for some manual or to use the manual. It had to do with what RSA does for thousands of individuals in Utah and around the country, and that's provide training. That's helpful. What about the idea that Evergreen identified and thanked Sorensen in the forward until 2009? Is there any evidence that Mr. Sorensen was aware of that forward and the thank you that he received for his involvement? There's not an iota of evidence in the record supporting the notion that Mr. Sorensen or anybody at RSA was aware of that. Nothing. What about the concept that Sorensen advertised his involvement in the development of the Washington pilot? Yeah. What he advertised is that he met with them and consulted with them. That doesn't have anything to do with a manual that they may create. In fact, the last thing he anticipated was that they may create a manual copying his materials. He didn't anticipate a manual being created. He was giving them the kind of forward training in the pilot car industry that he does for everyone. When is the first date that Mr. Sorensen received a copy of the manual? I know it's been altered, but the original date. I believe it was August 2009. 2009? 2009. Okay. That's when the mailing was? It wasn't opened? No, the mailing was much earlier, 1999. The manual was mailed to RSA, not opened. RSA at that time was a fairly large concern. He was, in fact, involved with WorldCom doing telecommunications. This was not his only business. His wife handled all of the incoming mail. And what's happened here is you have Evergreen attempting to import a standard of notice that applies for acceptance of a contract in the context of a commercial negotiation. There it makes sense to say, look, if I'm in negotiations with you and I've made an offer of contract to you, I should be looking for something in the mail to come back as an acceptance. But this is a very different standard. The question is one of reasonableness given full knowledge of the facts. Given what you said earlier, Mr. Osler, you mentioned that Mr. Sorensen was consulting, you said, with an individual in 1999. Not consulting, training. Training, okay. That's different. I mean, he puts on thousands of classes. He's put on over 1,000 classes during that time period where he trains individuals and did the same thing in Washington. Your point, I gather, is the fact that he received a mailing. Let me say this. Does the record show how many people Mr. Sorensen employed at RSA in 1999? I don't believe the record does show that.  Was it more than himself? Yes. It was. Yes. In fact, at the time he had numerous employees and several different businesses. Were they family members or were they people that were professionals like himself? One of the members was his wife. One of the people employed was his wife. Okay. Yeah, but others were not. Okay. But that's not in the record. At least he has only one wife, then. I don't have personal knowledge of that. I don't know. If he had one with his wife and the others weren't, that's. . . Yes, I assume he had only one wife. Judge Reinhardt is interested in these kinds of things. In any event, what's happening is that we're trying to import a standard where we have a standard of full knowledge where you're saying that it's unreasonable for a person not to act. And the question for this court is was it unreasonable for him not to act and even if it was because the first standard is, okay, let's say he should have known. I don't think we get there because we've got the wrong standard that we're looking at. Let me ask you this, Mr. Osler. Obviously, there's a conflict between what people say. Correct. But let's just say arguendo. That's all we're talking about, arguendo. Let's say that the manual was sent and was received by Mr. Sorensen in 1999. Would you agree that in that setting, if that were proven and undisputed, that latches would likely apply? I don't believe so. Okay, why is that? Because you would have to show that it was reasonable for him to expect to receive it and to be on notice. But I'm saying that he did. . . In the hypothetical, he actually got it, he saw it. No, I would agree. I would agree if he actually saw it and had full knowledge of the facts, that latches would apply. That doesn't mean that the infringement wasn't willful. It just means that latches. . . Wait a minute. Now I'm lost. You say it would be latches, but infringement would still be lawful. Well, it would still be willful, in which case latches wouldn't apply. Right, willfulness. If infringement is willful, latches is not a defense. All right, hold on, hold on, hold on. Because there are two separate points, and I'm trying to understand what you're saying. Latches could apply, but then, in the normal case, but if it's willful infringement, then what? Then latches doesn't apply. In other words. . . So you're only talking about Step 1 when you say latches would apply. That's correct. I'm not talking about Step 2. But you're saying that still there would be willful infringement and, therefore, latches could not apply in this case. That's correct. Okay. Yeah, because what we're asking is, first of all, is there latches? In order to show latches, we have to show that either knew or should have known under the circumstances. But even if he should have known and latches applies, if there's an issue of fact regarding whether or not infringement is willful in a summary judgment context, then it's got to be remanded back to the court. If it's clear that the infringement was willful, given the standard adopted in the Danjuk case by the Ninth Circuit, that they, in fact, knew that it was copyrighted and they verbatim copied it anyways, the district court found, then it's willful. Let me ask you this. I wrote a case called Asset Management Systems a number of years ago. It dealt with, not this issue, but somewhat similar. And one of the things that we talked about there was the interaction between the parties and what the expectation came to be. Now, that I dealt with a code, and that's a little different. But in this case, if Evergreen, based on its interaction, as it states, with Mr. Sorensen was of the view that he knew what they were doing, there was no objection and so on, doesn't that also undercut the concept of willfulness? No, because willfulness is established by showing that they knew that it was copyrighted and verbatim copied it anyway without permission. So you're saying that even if they say they knew that it was copyrighted and even though they dealt with him and he knew what they were doing and he didn't say anything and there was no problem and they put his name in the foreword and he didn't say anything until 2009, you're saying that notwithstanding that fact, the fact that they knew, and the hypothetical that you're talking about, or from your perspective, the actual fact that they knew the manual was copyrighted, that's all it takes to show willfulness. What you're doing is applying a test that applies in the patent willfulness context and applying it to copyright where it's not applicable. Two different kinds of willfulness analysis applies. And what Evergreen has done is applied the patent analysis of willfulness to copyright where it doesn't apply. The reason for that is that in the copyright context, the bare fact of knowing that it's copyrighted is the protection. And if you nevertheless copy it without permission or attempting to obtain permission, then it's willful. That's what willfulness consists of. We have one minute left. I'll reserve whatever I can, the 55 seconds. Thank you. And the citation is ER-163. For the check, it says, Pilot Escort Training for Rick, $300. Okay, thank you. Good morning, Your Honors. May it please the Court, my name is Tiffany Connors, and I represent Evergreen Safety Council. And with me today is my colleague David Spillman. There are three issues before the Court. I'm going to discuss those three issues briefly and then address each one in more detail. Well, let me just say before you do that, Judge Smith's questions I think brought it down to a simple question about willful infringement. And let's assume for the moment that latches would exist in the absence of willful infringement. Maybe that's not right, but from your standpoint, that's the best you could do. Okay, so you have latches that would ordinarily apply. And they're saying it's willful infringement, and you're saying, well, we sent them all this stuff, so they knew it, that they didn't open the envelope too bad. We'll assume they know what's in the envelope. And you're saying that gives us, in effect, an implied license. I think that's the copyright term. And the question seems to be just purely a question of law. Can you obtain an implied license by saying to somebody, okay, here's the material, we're going to use it, and if you don't tell us not to, you've given us a license. Is that what the law is? No. I believe the willfulness determination is separate from the implied license determination. In other words, you could find an absence of willfulness even if there were no license. So you don't need an implied license. We don't in this case. There is a colorable license in this case, but we don't need to find a license here to find an absence of willfulness. The willfulness determination, willfulness is an exception to the latches defense. So it's RSA's burden to prove that that exception applies. But they failed to sustain that burden because they haven't produced any evidence of bad faith. Is that what's required? Is it bad faith? Well, no, it's not bad faith. The standard under the Danjack case is that the defendant knew that his conduct was infringing. I can say that I want to get this clear because Mr. Osler has asserted that the willfulness standard is not the one under patent law, he claimed. He says the copyright one, if you know there is a copyright and you do anything with it, you're willfully infringing it. I'm concerned about his position. I'd like your comment on Danzig. I'm just going to quote briefly here. Danzig at 951 says, it must be obvious to everyone there with equitable principles that it is inequitable for the owner of a copyright with full notice of an intended infringement to stand inactive while the proposed infringer spends large sums of money and so on. That implies to me that, at least to the Danzig court, or Danjack court, that there was an assumption or perhaps proof that there was knowledge about the copyright and nonetheless they found no willfulness. Is that a correct reading of that case? I think there's two separate questions there. One is the willfulness standard itself and the other is the full notice standard. Tell me about what the standard is itself. Do you disagree with Mr. Osler's position? I do. What is the correct position and what's your authority for that? In Danjack, the court says that willfulness is defined as conduct where the defendant knew that his behavior was infringing. So by your perspective, it's just the opposite of what Mr. Osler said. You're saying by definition you had to know there was a copyright and nonetheless there was nothing going on, right? You did know there was a copyright. We don't dispute that we knew there was a copyright. Mr. Osler keeps going back to the point that just because we knew that the manual, that RSA's manual was copyrighted, the infringement is necessarily willful. But the Danjack case specifically refutes that point. That's what I was just reading, right, that particular section? Yeah. It says that if just knowing that something was copyrighted were enough to make something willful, then every copyright claim would turn into willful infringement and you would discourage legitimate transactions. What willfulness requires is something more than knowledge of the copyright. It requires that you proceeded knowing that your conduct was infringing. So in this case, it would be not only that Mr. Sorensen or RSA had a copyright in his manual, but that publishing Evergreen's manual was directly infringing on that copyright. And the acknowledgment that appeared in the manual from 1999 to 2009 in all the editions of the manual is per se evidence that Evergreen did not have that belief, that acknowledgment thanks Mr. Sorensen for his assistance and shows that Evergreen was proceeding believing that it had Mr. Sorensen's both assistance and his permission. I discussed with Mr. Osler the 1999 mailing issue. You say you sent him a manual. He denies receiving it. Was there any other evidence in the record that showed that a copy of the manual was either mailed to, delivered to, or otherwise gotten to Mr. Sorensen between 1999 and 2009? Mr. Sorensen does not dispute that he received the manual. At his deposition, he testified. Do you have an ER for me, please? I can get it. Yeah, fine. Just maybe have your co-counsel get it or you can get it. He testified that it was sent to the correct address and that he received the manual and the letter thanking him for his assistance, but that he had never opened it. In addition to that fact, there's the acknowledgment that appeared for 10 years and there's Evergreen's copyright registration. And that does refresh my recollection. So it is the correct address. Other things were sent there like checks or things like that didn't come back. He acknowledges receiving the package. You just said he didn't open it, right? Yes, he had the package in his possession for the whole 10 years. And during this case, he didn't produce it in discovery, but he did have it in his possession. And so there's no dispute about the receipt of the package. What's the law on, I'll call it the law of unopened packages? What do we make of that? Does it make any difference if you provided the manual to him, if he sat on it in effect? Does that go into the latches calculation? It makes no difference in this case whether he opened the package or not. This goes back to the other point that you're addressing in DANTAC, which is the full notice. And in the Ninth Circuit, the standard, the consistent standard for a latches determination in addressing the element of unreasonable delay is that the start of the latches period runs from the time that the plaintiff knew or should have known. And that should have known element is crucial here. It is the dispositive element in the district court's opinion. In fact, the district court was so clear as to say that even though opening of the package may be a disputed fact, that fact is irrelevant because what's controlling is the should have known standard because after this series of meetings, a telephone call very recent in time before Evergreen sent Mr. Sorensen the manual, the letter thanking him, the manual, the acknowledgment, the should have known standard applies here. Remind me of the telephone call. What was the substance of that? We don't know, and that's one of the forms of evidentiary prejudice that's apparent here. Mr. Sorensen says that he can't recall any of the meetings. The reason why we know there's a telephone call is because it's stated in the letter. I understand. The letter opens by saying something like, it was good speaking with you on the phone this week. It's fairly clear, I think, that there was latches. The question is, is there a willful infringement? You know that they have a copyright. Now, what is it that gives you a right to use their copyright? Those are the facts that I'd like to understand. Is it merely the fact that you sent them what you're going to do and they didn't reply? Does that give you an implied license? No, I think it goes beyond that. I think there's, first of all, it's important to note that there's a distinction between recognizing copyright in a 100-page manual as a whole, the entire work, versus recognizing a copyright in individual diagrams and a list of maintenance equipment that actually appeared and was derived from public sources. So it's consistent to recognize the manual as a whole was copyrighted, but not recognize that the individual portions at issue here were copyrighted. There's a fair use. At the district court level, there was a fair use defense. Is fair use an issue here? It is not. No. Okay, then tell me what is. So far I've gotten, I understand from your answer that sending it to them doesn't mean you could use it entirely, but you may be able to use some material in it. What else gives you the right to use copyrighted material because you send them a manuscript? Well, by sending the manual to Mr. Sorenson, Evergreen was following the exact prescribed procedure that Mr. Sorenson had set out. In his own manual, there's a passage that says, it's at the beginning, that he is happy to, I'm paraphrasing, but he's happy to assist and that, quote, requests for permission should be sent to the attention of the author at Mr. Sorenson's address. But you didn't send him a request for permission, did you? Well, when we sent him. You could have said in the letter, we request permission to use this material, but you didn't do that. We did not do that, and I think that the reason for that was because of the interaction between the parties before that time, that the parties had had at least two meetings and a telephone call. So by the time that Evergreen sends Mr. Sorenson... There's a dispute of factors to that, isn't there? They say the meetings had to do with training people, not with using their material. The way that Mr. Sorenson's program works is that he is the founding father, if you will, of pilot escort vehicle training. He was looking to promote the same thing that Washington State and Evergreen Safety Council were, which was standardization. He testified in his deposition that he provided the manual to the states he was working with in that training, including Washington and including Oklahoma, so that they could be up to speed on the standardization ideas that he was developing. So, and again, there's no dispute that all these states were working towards the standardization process and implementing the same ideas that Mr. Sorenson had taught and had trained instructors on. You know, when you look at Evergreen's step of sending the manual to Mr. Sorenson, it was after these meetings where, at the very least, they were discussing the standardization of this industry and where Mr. Sorenson acknowledged in his deposition that he had actually given them the manual to review, as he did with the states he was working with. But what did the letters say exactly? I have a copy, if that would be helpful for your honors right now, but it... Isn't it in the record? Isn't it in the record? Yeah, that's right, but in your view, what did it amount to? It said, thank you for taking the time to talk with us. Thank you for working with us. You've given us the courage to proceed with developing this manual. It actually referred to the manual as a handbook, and I think that the way that the letter refers to the handbook is important here because it doesn't say what the handbook was. It doesn't give any description of the handbook, so it shows that there's a familiarity on Mr. Sorenson's part, that he was aware that Evergreen was developing this handbook and that he had heard about it before. And they enclosed with that letter a draft copy of the handbook that included the exact diagrams at issue here and the exact disputed list. So any argument that it was a draft copy doesn't hold up because everything that the alleged infringement depends on was in that draft. So it would have put him on notice that you were going to use this material. It put him on notice whether he opened it or not because the should-have-known standard is... It would have given him knowledge. Yes, it's an objectively reasonable person standard. That was a question I started out with. If you send somebody something that makes them realize that you're going to use their copyright, does that mean that by sending it to them you get a license from them if they don't object? It doesn't have to mean that. I don't think it would necessarily mean that in all circumstances, no. Well, suppose you said, look, I'm going to infringe your copyright. I'm going to use it. And does that mean then you're free to use it because they don't object? I think it's less the not objecting. If somebody just sent you that unexpected without any interactions before, perhaps that would be unreasonable. You said you're not willfully infringing, isn't that? It certainly means that you're not willfully infringing. Isn't that all you have to show? In this case, yes. There's Mr. Osler address 1. Well, that's the issue. Are you willfully infringing? If you... That was my question. Does it mean that you can put somebody on notice that you're going to infringe, and does that mean that you're not then willfully infringing? It does. The standard... Is he saying that I'm going to infringe? Again, it's not... Well, I can say, isn't the real issue here whether there was good faith, basically? The hypothetical that Judge Reinhart postulated basically is kind of an in-your-face, you've got a copyright, I'm going to infringe it, and if you don't say anything about it, you're okay. Right. Is that what the law is? There's more to it than that, isn't there? That's exactly right. And isn't that a matter of good faith? What I understand you to be saying here is, yeah, we knew there was copyright. We dealt with the owner of the copyright. He was aware of what we were doing. He knew we were going to make alterations and so on. As a matter of fact, today we have virtually nothing in there that was done by him or copyrighted. The rest of it's in the public domain. We went along in good faith. We thought he was perfectly aware of this and everything is cool, and he didn't take his action in time. Isn't that your position? That is our position. Okay. Well, your argument has been summarized. Your time is over. Thank you. Thank you, Your Honors. Thank you. If we're playing a good faith standard, what good faith requires is a follow-up to make sure that, in fact, it's received and a permission to use the copyrighted material is received. What they did is they copied verbatim an equipment list and 23 diagrams that were engineered and took a great deal of time and effort and knowledge and experience to create. This is not a mere partial use. Twenty-three diagrams is a lot. What they should have done in good faith was follow it up and said, look, you received this. Do you have any objection? If all that one has to do is send material to somebody and not follow up, and that avoids willful infringement because it amounts, in essence, to a license. I mean, what's the difference between a license? I get to use it if you don't act. They should have followed up and made sure. If they had this kind of close relationship, where's the follow-up? Where are the subsequent discussions about, gee, did you receive this, and is it okay if we do this? And did he really have full knowledge of the facts, as the learned hand standard requires? Mr. Osler, just one final question, at least from me. I notice you have not pushed the concept that there were material issues of fact here, that this was decided on summary judgment. There are obviously different perspectives on some important context. Right. Is it part of the thrust of your argument that whatever the court would ultimately decide, summary judgment is the wrong vehicle, if you will, to make this determination because there's just not enough to permit the court to do that? That's precisely our position. Willfulness is a fact-intensive assessment. Did, in fact, they act in good faith? Well, that requires a look at all of the facts to determine whether, in the context, Mr. Sorenson was, in fact, on full notice of the facts or should have been on full notice of the facts and was what they provided to him sufficiently. And I get a lot. I guess the contrary would be if taking everything that you said, nonetheless the court concluded that was all that was needed, there was no material fact, yet then the court could move forward on the latches. That's the summary judgment standard. If there are no material issues of fact, you can grant summary judgment. Thank you, at least from my part. One short question. Is good faith a defense to willful infringement? No. The question is what constitutes willful infringement. If one knows that a matter is copyrighted and nevertheless takes it knowing it's copyrighted and uses it intentionally without obtaining permission, in the copyright context, that is willful infringement. There's nothing more required. If they nevertheless say, well, gee, we were acting in good faith, then you've changed the standard. It's not full knowledge, acting with full knowledge of the facts, or in this context, knowing that a matter is copyrighted and still copying it without permission. If we're going to change the standard to good faith, that is without permission, without an express permission, beyond any negotiations, discussions, communications, that's your position. Right. What they should have done, they should have either made sure that he received that and was aware of it or contacted him and said, we know you've spent a lot of time on this. We'd like permission to use it. We appreciate what you've done for us. Thank you. Instead, what they did, after all he had given to them, was turned around and took very, very valuable material and simply copied it and put it out as their own. They pirated it. Okay. Thank you very much. Thank you both. It's an interesting argument. And the case is argued will be under submission. And we'll now hear.
judges: Schroeder, Reinhardt, Smith